1  Russell A. Robinson, SBN 163937
   Law Office of Russell A. Robinson
2  345 Grove Street, 1st Floor
   San Francisco, CA 94102
3  Phone:       415.861.4416
   Fax:         415.431.4526
4  rlaw345@gmail.com

5  Counsel for Plaintiff
   **JUAN ESPINOZA**

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

   JUAN ESPINOZA,                      Case No.
11
            Plaintiff,                 **COMPLAINT FOR DAMAGES AND INJUNCTIVE
12                                      RELIEF**
   v.
13
   CITY OF TRACY, CHIEF OF POLICE      [Jury Trial Demanded]
14 GARY HAMPTON, R. LEON CHURCHILL,
   JR., and DOES 1 through 40, inclusive,
15
            Defendants.
16 _____/

17       This is a federal civil rights complaint, alleging violations under 42 USC §1983 of rights

18 guaranteed under the United States Constitution.  Thus, this Court is vested with jurisdiction

19 under 28 USC §1331.

20       Most of the acts complained of took place in and/or near the City of Tracy, County of

21 San Joaquin.  Thus, the proper venue for this action is in the Eastern District of California.

22       COMES NOW PLAINTIFF JUAN ESPINOZA AND ALLEGES AS FOLLOWS:

23       1.       Plaintiff Juan Espinoza was employed by Defendant CITY OF TRACY ("City" or

24 "Tracy") at Tracy's POLICE DEPARTMENT ("TPD") in the capacity of police captain.  Plaintiff

25 was continuously employed by Tracy since February 15, 1995, having been promoted from

26 lieutenant to captain.  On about July 29, 2013, Plaintiff was forced to retire by the actions of

27 Defendants named herein.

28 / / /

1    2.    A related state action was filed on about March 14, 2011.  A that time, Plaintiff

2   included the TPD as a defendant in the state action.  Since the filing thereof, Defendant Tracy

3   that the TPD is not an entity capable of being sued; thus, Plaintiff has not named the TPD as a

4   named-defendant herein.  Plaintiff shall seek to amend should the need to name the TPD as a

5   defendant arise.

6    3.    Plaintiff Espinoza was a permanent employee of Tracy and was classified as a

7   peace officer under Penal Code section 830.1.  Espinoza therefore is, and at all times herein

8   mentioned was, entitled to rights and privileges of the Public Safety Officers Procedural Bill of

9   Rights Act (the Act or POBR) as codified at California Government Code sections 3300, et seq.

10    4.    Defendant City is, and at all times mentioned was, a political subdivision

11   organized and existing under the laws of the State of California.  Tracy is a general law city.

12    5.    Defendant R. LEON CHURCHILL, JR., was at all times relevant the City

13   Manager for the City of Tracy.  Churchill, charged with knowledge of constitutional mandates

14   and city management, was on information and belief one of the primary policy makers for the

15   City.  Churchill is sued in his individual and official capacities.

16    6.    JANET THIESSEN was at times mentioned Chief of Police for the City of Tracy,

17   and was from February 2009 until August 2011, Plaintiff's supervisor.  Thiessen, charged with

18   understanding and enforcing the laws of the State of California as the TPD's chief and with

19   knowledge of constitutional mandates, was on information and belief the primary policy maker

20   for the TPD until August 2011.  MARIA OLVERA was at times mentioned Director of Human

21   resources for the City of Tracy, departing in 2012. Olvera, charged with understanding and

22   enforcing laws of the State of California related to personnel/employment issues and privacy,

23   was on information and belief a policy maker for the City of Tracy.  While not defendants

24   herein, Thiessen and Olvera played roles in some of the below-described acts.

25    7.    Defendant CHIEF OF POLICE GARY HAMPTON, is, and has been since about

26   August 2011, the Chief of Police in the City of Tracy.  He was Plaintiff's direct supervisor.

27   Hampton, charged with understanding and enforcing the laws of the State of California as the

28   TPD's chief and with knowledge of constitutional mandates, was and is on information and

1 │ belief the primary policy maker for the TPD.  He is sued in his individual and official capacities.

2 │       8.     The true names and capacities of Defendants sued herein as DOES 1-40 ("DOE

3 │ defendants") are unknown to Plaintiff, who therefore sues said Defendants by such fictitious

4 │ names, and Plaintiff will seek leave to amend this complaint to show their true names and

5 │ capacities when the same are ascertained.  On information and belief, each DOE defendant

6 │ was an employee/agent of the co-defendants, and at all material times acted within the course

7 │ and scope of that relationship.

8 │       9.     Plaintiff is informed and believes each Defendant sued herein was wrongfully

9 │ and otherwise responsible in some manner for the events and happenings as hereinafter

10 │ described, and proximately caused injuries and damages to Plaintiff.  Further, one or more

11 │ DOE defendants was at all material times responsible for hiring, training, supervision, and

12 │ discipline of the other defendants.

13 │      10.     Plaintiff is informed and believes that each Defendant was at all material times

14 │ an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the

15 │ remaining Defendants, and in doing the things herein alleged, was acting within the course and

16 │ scope of that relationship.  Plaintiff is further informed and believes that each Defendant gave

17 │ consent, aid, and assistance to each of the remaining Defendants, and ratified and/or

18 │ authorized the acts or omissions of each Defendant as alleged herein, except as may be

19 │ hereinafter otherwise specifically alleged.

20 │      11.     All or most of the acts complained of took place in the County of San Joaquin.

21 │      12.     Espinoza may bring an action for injunctive relief without further exhaustion of

22 │ administrative remedies.  This Court is authorized to render appropriate injunctive or other

23 │ extraordinary relief to remedy.

24 │      13.     On or about September 1, 2010, Espinoza filed a government tort claim against

25 │ the City.  City notified Espinoza said claim was rejected on about September 13, 2010.

26 │      14.     On or about October 4, 2011, Espinoza filed a second government tort claim

27 │ against the City, alleging retaliation and other conduct by Defendant Churchill.  City notified

28 │ Espinoza said claim was rejected on about October 27, 2011.

*Espinoza v. City of Tracy, et al.*                 P001FEDCOMP
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF        - 3 -

1        15.      The state action was filed on March 14, 2011.  While the original complaint was

2    never served on Defendants, on information and belief each knew of the state action shortly

3    after filing and had been provided a copy of the original complaint long before June 1, 2011.

4        16.      Espinoza caused an amended complaint to be filed on November 14, 2011.

5    Defendant Tracy answered the amended complaint on about December 14, 2011.  Thereafter,

6    discovery commenced in 2012 and certain claims or causes of action were dismissed upon

7    successive motions and/or demurrers by the defense.

8                          **EXEMPTION FROM THE EXCLUSIVE REMEDY RULE**

9        17.      Plaintiff is informed and believes that unlawful employment actions complained

10   of herein, as a result of which Plaintiff sustained injuries and damages enumerated herein, were

11   and are violations of the laws and fundamental public policies of the State of California and the

12   Constitution of the United States of America.  Thus, Plaintiff's claims are not subject to the

13   exclusive remedy provisions of California's Worker's Compensation Act and not otherwise

14   barred or preempted.

15                          **FACTS COMMON TO ALL CAUSES OF ACTION**

16       18.      Prior to and after commencing the state action, Plaintiff complained formally and

17   informally about the investigation into allegations of discrimination against Plaintiff by Tracy in

18   connection with a lieutenant at the TPD.  Prior to and after commencing the state action,

19   Plaintiff complained formally and informally about the investigation into allegations against him

20   by Tracy in connection with the purported failure by Defendant to report an in-custody death.

21       19.      Plaintiff *alleged* with regard to these two complaints that Tracy, Does 1-40, and

22   each of them, refused to surrender investigation, notes, tapes, and other requested materials

23   so Plaintiff could defend himself through due process; that the City destroyed evidence; that

24   Tracy transferred Plaintiff from command bureau; that Tracy failed to promote Plaintiff to acting

25   Chief causing denial of pay, standing for job or similar job through experience gained; that

26   Plaintiff was denied the position of Acting Chief of Police in violation of past practice; that Tracy

27   had engaged in destruction of evidence created in connection with investigations of Plaintiff;

28   that Tracy brought false accusations and retaliatory investigations against Plaintiff alleging he

1   did not notify the Chief of Police about an in-custody death in which City knew he was not

2   involved; that Tracy mandated additional training for Plaintiff; that Tracy effected the removal of

3   Plaintiff from city and community activities to isolate him, and, that Tracy had engaged in

4   threats of retaliation for filing the state action.

5         20.     On November 19, 2009, Plaintiff was interviewed by an investigator retained by

6   Tracy regarding a false allegation that Plaintiff had failed to notify the Chief (Janet Thiessen)

7   about an in-custody death.  The death had occurred on about September 9, 2009, and

8   Thiessen had questioned Plaintiff about that incident before giving Plaintiff formal notice

9   required by California law, and well before the November 19, 2009, interview.

10        21.     On about September 10, 2010, the one-year statute of limitations for proposing

11   administrative discipline under California Government Code section 3304(d) expired with no

12   action by Tracy.  On or about January 18, 2011, Plaintiff requested of Tracy and R. Leon

13   Churchill, Jr., that the investigation be closed.  As of October 4, 2011, the investigation had not

14   been closed; or, if it had been closed, Plaintiff was not advised of this fact until February 8,

15   2013, as set forth below.

16        22.     The "open" investigation could not as a matter of law form a basis for any

17   subsequent investigation or disciplinary action by Tracy.  Nonetheless, that "open" investigation

18   arising from the September 2009 in-custody death was used by Tracy and Churchill as recently

19   as August or September 2011 as alleged evidence of Plaintiff's misconduct.  Further,

20          A.     Plaintiff Espinoza discussed this in-custody death with Thiessen the same
21                   date as he learned of this death.  The death had been reported to
                      Espinoza September 10, 2009; he met with Chief Thiessen later that day
22                   and during that meeting Espinoza reported this death to Thiessen.  It was
                      Lt. Wade Harper who in fact failed to report this in-custody death.  Rather
23                   than investigate Harper – who posed no threat to Thiessen (real and/or
                      imaginary) – Thiessen caused an Internal Affairs investigation (IA) to be
24                   started against Espinoza.  Thiessen questioned Espinoza about the
                      matter between September 10, 2009, and October 6, 2009.

25          B.     It was not until October 6, 2009, that Plaintiff Espinoza was advised of the
                      IA being conducted into his ostensible failure to report this "critical
26                   incident."  Espinoza, no longer in Harper's command chain, reported the
                      "critical incident" to his superior within the TPD, Chief Thiessen, on the
27                   same date he learned of the incident.  But, it was Thiessen who initiated
                      the IA against Espinoza after surreptitiously questioning Espinoza for one
28                   month before notifying him of the charges and investigation.

*Espinoza v. City of Tracy, et al.*                                       P001FEDCOMP
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF           - 5 -

C.   Despite many requests for the results of this IA, and for a finding from the City that the IA was closed, Espinoza was not informed the IA was closed until the **January 9, 2013,** deposition of Chief Gary Hampton *in the state case.* Espinoza was never provided the written report until his own **February 8, 2013,** deposition *in the state case.*

25.   Defendant Tracy did not give a test for the 2011 Chief of Police position, thereby denying Plaintiff the opportunity to test.  In "appointing" current Chief of Police, Gary Hampton, Defendant Tracy made good on threats voiced by Bill Mathis, Ph.D., on about June 15, 2011. On June 15, 2011, Plaintiff was called to a meeting with then-Chief Janet Thiessen.  Rather than spend time meeting with Plaintiff, Thiessen, as previously alleged, forced Plaintiff to meet with Bill Mathis, Ph.D., who, on information and belief, was/is a consultant hired by Tracy.

26.   During the above-mentioned meeting, Mathis told Plaintiff that Plaintiff would never be made interim Chief of the Tracy Police Department unless Plaintiff dismissed his lawsuit (the state action).

27.   As alleged above and in prior pleadings, Plaintiff was subjected to selective enforcement of the disciplinary process.  For example, Plaintiff was subjected to two, unwarranted Internal Affair investigations (IA) and in both cases the City failed to prove any misconduct by Plaintiff, yet both were left open despite clear mandates, and Plaintiff's demands, that these be officially closed and properly designated.  Plaintiff was also denied the opportunity to receive complete information obtained during the course of at least one of the investigations (that dealing with the in-custody death) so Plaintiff could evaluate and respond to any negative entries/comments made against him.  Other members of the TPD, particularly two or three in Thiessen's favor, were allowed to continue to act in insubordinate ways, to undermine authority of Plaintiff and others, and to engage in acts of defiance because they were favored, all to the detriment of the TPD and public.

28.   On or about June 8, 2011, Thiessen announced her resignation as Chief of Police, with an effective date of July 8, 2011.  On or about July 5, 2011, Thiessen publicly criticized, in both print media and video news media, the City and the TPD, alleging gender bias by males in the Department as the cause of her failure as Chief.  Tracy City Mayor Brent Ives then went on video media and denounced Thiessen's allegation as untrue.

1    29.    Thiessen's public criticism of the City and Department, while protected, was in

2  violation of City and Department policy, particularly in view of the fact that she leveled criticism

3  while wearing her official police uniform; and, that criticism created further discontent among

4  staff members because of the allegations.  Nonetheless, Defendant Churchill asked Thiessen

5  to remain an additional six weeks as the interim chief of police until an outside person was

6  hired. Thiessen was then granted a generous severance package, even though she publicly

7  stated she "quit" and City Manager Churchill publicly stated she resigned. Under established

8  City policy, one who resigns or quits ordinarily does not and did not receive such generous

9  severance packages.  Thiessen's contract stipulated that she was only due a severance

10  package if she was forced to resign or was terminated.  On information and belief, Thiessen's

11  favorable treatment upon her resignation is further evidence of nepotism and favoritism

12  permeating the City and Department while Churchill was City Manager.

13    30.    During the six weeks Thiessen was allowed to remain as interim chief, Plaintiff

14  Juan Espinoza, then the highest-ranking and most senior of all sworn command officers, was

15  not allowed to work as acting or interim chief and was not considered for the position.  The

16  City's past practice has been to appoint other senior command personnel or managers to serve

17  as acting or interim chiefs or department heads until a permanent chief or department head is

18  selected through a competitive process.  Plaintiff is informed and believes the conduct by

19  Defendants, in allowing Thiessen to stay as interim chief while denying Plaintiff the right to work

20  as interim or acting chief, was in retaliation for Plaintiff's protected activity, including but not

21  limited to the state action and the afore-mentioned government claims.  Conduct by Defendants

22  and each of them evinces nepotism and favoritism, ways in which the *de facto* policy of

23  retaliation manifests against those not part of the group loyal to Churchill and the other

24  defendants herein.

25    31.    During the time she was Chief of Police, Thiessen oversaw a Department which

26  not infrequently engaged in retaliation against officers within the TPD and private citizens. In

27  one situation, a private citizen complained about dishonesty by Thiessen.  Churchill, a witness

28  to Thiessen's misconduct, ignored conflict of interest issues in eventually determining that the

*Espinoza v. City of Tracy, et al.*                                                P001FEDCOMP
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF                        - 7 -

1  violation which he personally witnessed by Thiessen was "exonerated."  According to TPD

2  policy, "exonerated" means "the investigation has determined that the acts which provided the

3  basis for the complaint occurred, however, investigation revealed that the acts were justified,

4  lawful or proper."  Churchill's actions condoned misconduct in allowing the chief of police to be

5  dishonest.  Thiessen then used the powers of the TPD under her control to harass private

6  citizens who complained in much the same way Plaintiff was abused by Thiessen and Olvera's

7  misuse of the TPD's IA process.

8        32.      During the course of aforementioned discovery in the state litigation, Plaintiff

9  finally learned the results of the investigation initiated against him by Tracy and Thiessen

10  regarding the in-custody death.  On about February 8, 2013, during his deposition, Plaintiff was

11  provided the documentation for the first time as to an investigation that was several years old,

12  and that should have been closed with proper notice to Plaintiff long before February 8, 2013.

13  Plaintiff had formally complained about this investigation and the handling of the investigation

14  by Tracy on October 4, 2011.

15        33.      In connection with his deposition, what appeared to be a conflict of interest

16  became manifest on February 8, 2013.  That is, counsel for Tracy was engaging in *ex parte*

17  communications with Plaintiff, without consent of Plaintiff's counsel about personnel matters.

18  Tracy was also treating Plaintiff as its joint, or dual, client in personnel matters which Plaintiff

19  had been charged with investigating and which were going to arbitration.

20        34.      That is, during Plaintiff's February 8, 2013, deposition, it became apparent to

21  Plaintiff and counsel that a conflict of interest likely existed; attorneys working for the same law

22  firm as those representing Defendants in the state case were having *ex parte* communications

23  with Plaintiff about personnel matters, seeking Plaintiff's thought processes, and engaging in

24  what in good faith appeared to be improper and prohibited contacts with Plaintiff; in fact, on

25  information and belief, the supervising attorney in this matter and in the related personnel

26  matters was attorney Cynthia O'Neill.

27        35.      Plaintiff notified defense counsel of the impropriety of these contacts shortly after

28  February 8, 2013.  Thereafter, through counsel, Plaintiff obtained a stay of the state action

1   pending outcome of a motion to disqualify defense counsel herein.  That motion was served

2   late the afternoon of April 3, 2013, on defense counsel in San Francisco.

3         36.     On the early morning of April 4, 2013, about 17 hours after the motion was

4   served on defense counsel in San Francisco, and before the motion to disqualify was even filed

5   in the San Joaquin County Superior Court, Plaintiff was placed on administrative leave.

6         37.     On information and belief, Defendant in connection with Plaintiff's April 4, 2013,

7   suspension, an administrative action was initiated by Hampton, Churchill, Tracy, and Does 1-40

8   against Plaintiff almost immediately because he had filed the motion to disqualify counsel; the

9   ostensible basis for his suspension was his disclosure in that motion served April 3, 2013, of

10  confidential material pertaining to two, other peace officers.  Hampton and Churchill were not

11  personally served with the motion.

12        38.     In connection with Plaintiff's April 4, 2013, suspension, Hampton immediately

13  ordered Plaintiff to relinquish Plaintiff's iPhone issued by the TPD.  In the state regard, Plaintiff

14  was treated in a manner completely different that other officers suspended under Hampton.

15        39.     On indefinite suspension, Plaintiff proceeded through the administrative process,

16  which was in fact discipline imposed on Plaintiff in retaliation for exercising the protected right of

17  seeking redress for his grievances herein, and in direct response to the April 3, 2013, service of

18  the motion to disqualify defense counsel herein.

19        40.     As a direct result of suspension, administrative process, disparate treatment, and

20  other unfair and retaliatory actions, Plaintiff was in fact constructively terminated frm his position

21  as Captain of Police with the City of Tracy on about July 29, 2013, when he was forced to retire.

**FIRST CAUSE OF ACTION**

**42 USC §1983**

**(As to all named Defendants)**

25        41.     Plaintiff incorporates by reference all preceding paragraphs as though set forth

26  fully herein.

27        42.     As referenced above, during Plaintiff's February 8, 2013, deposition in the state

28  case, it became apparent to Plaintiff and his attorney that a conflict of interest likely existed in

*Espinoza v. City of Tracy, et al.*                                                                P001FEDCOMP
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF                              - 9 -

1    that attorneys working for the same law firm as those representing Defendants in the state case

2    were having *ex parte* communications with Plaintiff about personnel matters, seeking Plaintiff's

3    thought processes, and engaging in what appeared to be improper and prohibited contacts with

4    Plaintiff; in fact, on information and belief, the supervising attorney in the state pending matter

5    and in the personnel matters was attorney Cynthia O'Neill.

6           43.     Plaintiff notified defense counsel of the impropriety of these contacts shortly after

7    February 8, 2013.  Thereafter, through counsel, Plaintiff obtained a stay of the state action

8    pending outcome of a motion to disqualify defense counsel herein.  That motion was served

9    late the afternoon of April 3, 2013, on defense counsel in San Francisco.

10          44.     On the early morning of April 4, 2013, about 17 hours after the motion was

11   served on defense counsel in San Francisco, and before the motion to disqualify was filed in

12   the San Joaquin County Superior Court, Plaintiff was placed on administrative leave directly by

13   Hampton.  The memorandum or notice was apparently authored by Hampton, and was handed

14   to Plaintiff by Hampton.

15          45.     On information and belief, Defendant in connection with Plaintiff's April 4, 2013,

16   suspension, an administrative action was initiated by Hampton, Churchill, Tracy, and Does 1-10

17   against Plaintiff almost immediately.

18          46.     In connection with Plaintiff's April 4, 2013, suspension, Hampton immediately

19   ordered Plaintiff to relinquish Plaintiff's iPhone issued by the TPD.  In this regard, Plaintiff was

20   treated in a manner completely different than other officers suspended under Hampton.

21          47.     On indefinite suspension, Plaintiff proceeded through the administrative process,

22   which was in fact discipline imposed on Plaintiff in retaliation for exercising the protected right of

23   seeking redress for his grievances herein, and in direct response to April 3, 2013, service of the

24   motion to disqualify defense counsel herein.

25          48.     As a direct result of suspension, administrative process, disparate treatment, and

26   other unfair and retaliatory actions, Plaintiff was in fact constructively terminated frm his position

27   as Captain of Police with the City of Tracy on about July 29, 2013, when he was forced to retire.

28   / / /

---

*Espinoza v. City of Tracy, et al.*                                                                    P001FEDCOMP
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF                          - 10 -

49.     Plaintiff is informed that, as to Defendants and each of them, each was acting pursuant to official, *de facto* policies and in concert with one another when they injured Plaintiff; each was acting in concert with the co-defendants, with the shared objective to injure the plaintiff and others like him.  The violations included but were not limited to the following:

        a.     Right to be free from discrimination;

        b.     Right to be from retaliation;

        c.     Right to due process; and/or,

        d.     Right to Equal Protection of the Law.

50.     Said rights are substantive guarantees under the First, Fourth, and/or Fourteenth Amendments to the United States Constitution.

51.     On information and belief, Plaintiff was suspended on April 4, 2013 (placed on admin leave) in direct response for seeking to disqualify defense attorneys in the state case who had engaged in ethically questionable conduct.  On information and belief, after the motion to disqualify was filed, Cynthia O'Neill ceased working on the state action but remained within the subject defense law firm.

52.     Further, after Plaintiff was constructively terminated July 29, 2013, with an effective date of July 30, 2013, Defendant Tracy delayed paying Plaintiff his accrued vacation pay.  On information and belief, this accrued vacation pay was due within a reasonable time after Plaintiff separated from employment with Tracy, but no later than two weeks after July 30, 2013.  Plaintiff did not received this accrued vacation pay until late February 2014, almost seven months following his forced retirement.  Accrued vacation pay was only received after Plaintiff filed additional tort claims under state law and with the California Labor Commissioner.

53.     In addition to refusing to pay the accrued vacation pay in a timely manner, Defendant Tracy, at the control of Churchill, canceled Plaintiff's health insurance, which included coverage for Plaintiff and his family comprised of wife and three sons.  After canceling Plaintiff's long-time medical coverage through Health Net, in about December 2013, retroactive to October 2013, Defendants assigned Plaintiff to a different health plan through Kaiser Permanente; Plaintiff never elected Kaiser coverage, and never indicated he intended to cease

1 | having medical insurance through Health Net.

2 |      54     These additional acts were intended, on information and belief, by Defendants

3 | Churchill, Tracy, Hampton, Does 1-10, and each of them, to cause Plaintiff financial hardship

4 | and general damage.  In fact, the suspension of April 4, 2013, the forced resignation of July 29

5 | 2013, the failure to pay accrued vacation pay upon separation, the cancellation of health

6 | insurance, and related acts did cause Plaintiff financial hardship and severe emotion distress,

7 | worry, frustration, stress, and related sequelae.  Plaintiff was damaged by Defendants' acts.

8 |      WHEREFORE, Plaintiff prays for relief as set forth below.

9 | **SECOND CAUSE OF ACTION**

10 | **42 USC §1983**

11 | **(As to all named Defendants)**

12 |      55.     Plaintiff incorporates by reference all preceding paragraphs as though set forth

13 | fully herein.

14 |      56.     Plaintiff is informed that, as to supervisory Defendants such as Churchill,

15 | Hampton, and each of them, each created, condoned, ratified, or was otherwise responsible for

16 | the official, *de facto* policies which were the moving force in causing Plaintiff's damages and

17 | injuries.  The unlawful practices, customs, and/or *de facto* policies, included but were not limited

18 | to the following:

19 |      a.     Discrimination in promotion and assignment;

20 |      b.     Retaliation for engaging in protected activity;

21 |      c.     Infringement of the right to due process; and/or,

22 |      d.     Infringement of the right to Equal Protection of the Law.

23 |      57.     Said rights are substantive guarantees under the First, Fourth, and/or Fourteenth

24 | Amendments to the United States Constitution.

25 |      58.     Plaintiff on information and belief was suspended in retaliation for exercising

26 | protected activity; and, the reason given for his suspension was pre-textual reason. That is, he

27 | was told he was being placed on administrative leave for the [limited] disclosure of third-party,

28 | peace officer information.

*Espinoza v. City of Tracy, et al.*
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF     - 12 -     P001FEDCOMP

1    59.    Yet, after Plaintiff separated from employment on July 29, 2013, with an effective

2  date of July 30, 203, Defendant Hampton made public disclosures of this information in direct

3  violation of the very same law(s) which Plaintiff was accused of violating.  Additionally, Captain

4  Jeremy Watney, who replaced Plaintiff, also made public, non-protected disclosures about

5  Plaintiff's separation, again in violation of the very same law(s) which Plaintiff had been

6  accused of violating on about April 3 or April 4, 2013.  No disciplinary action was commenced

7  against Hampton or Watney.  On information and belief, violations of California law by Hampton

8  and Watney were done in furtherance of the desire to discredit and to humble Plaintiff, and

9  pursuant to an agreement among Defendants and their unindicted co-conspirators to retaliate

10  against, and to damage, Plaintiff Juan Espinoza.  Plaintiff was damaged by Defendants' acts.

11    WHEREFORE, Plaintiff prays for relief as follows:

12                                        **PRAYER**

13    a.    Compensatory, special damages according to proof;

14    b.    General damages according to proof;

15    c.    For costs of suit and for reasonable attorneys' fees under, *inter alia,* 42 USC

16  section 1988;

17    d.    For pre-judgment and post-judgment interest;

18    e.    For an order requiring Defendants, all persons acting on behalf of Defendants,

19  and each of them, to do the following:

20        1.    To pay Plaintiff commensurate with the Chief's position, including
              benefits, retroactive to the date Janet Thiessen was hired;
21
        2.    To reinstate Plaintiff, with full benefits, retroactive to the date he was
22            placed on administrative leave (April 4, 2013), or the date he was forced
              to retire (July 29, 2013);
23
        3.    To stop all harassing acts aimed at Plaintiff, and others who may be
24            affiliated with the plaintiff or similarly situated as the plaintiff;

25        4.    To retrain each of the individually-named defendants regarding the
              proper use of authority and the discipline process;
26
        5.    To terminate the individually-named defendant with a history of
27            committing similar acts of malfeasance.

28  / / /

---

*Espinoza v. City of Tracy, et al.*                                    P001FEDCOMP
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF                    - 13 -

1        f.       Such other and further relief as the Court deems just and proper.

2

3    Date:   April 3, 2015                          Russell A. Robinson /s/
                                            By:     Russell A. Robinson
4                                           Law Office of Russell A. Robinson
                                            Counsel for Plaintiff
5                                           **JUAN ESPINOZA**

6
                                **DEMAND FOR JURY TRIAL**
7
         Plaintiff hereby demands a jury trial, as is his right.
8

9
     Date:   April 3, 2015                          Russell A. Robinson /s/
10                                          By:     Russell A. Robinson
                                            Law Office of Russell A. Robinson
11                                          Counsel for Plaintiff
                                            **JUAN ESPINOZA**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28