UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JUAN ESPINOZA,<br><br>       Plaintiff,<br><br>   v.<br><br>CITY OF TRACY, CHIEF OF POLICE GARY HAMPTON, R. LEON CHURCHILL, JR. AND DOES 1 through 40, inclusive<br><br>       Defendants. | Civ. No. 15-751 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>SUMMARY JUDGMENT</u> |

----oo0oo----

       Plaintiff Juan Espinoza filed this action against the City of Tracy ("the City") and City Manager R. Leon Churchill alleging unconstitutional discharge and retaliation under 42 U.S.C. § 1983.[1] (First Am. Compl. (Docket No. 33).) The City and Churchill (collectively "defendants") are the only remaining defendants. Defendants now move for summary judgment. (Defs.'

---

[1] Plaintiff dismissed defendant Gary Hampton, the City Chief of Police, from this action. (Docket No. 24.)

1

Mot. (Docket No. 67).)

I. Factual and Procedural History

Plaintiff worked for the City of Tracy's police department from 1995 to July 29, 2013 (Dep. of Juan Espinoza Vol. I ("Espinoza Dep. I") at 18:20-19:8); Ex. 43 ("Supp. Responses to Requests for Admissions") at 3.) In 2005, plaintiff was promoted from lieutenant to police captain. (Espinoza Dep. I at 24:20-21.)

In 2009, the City initiated two separate internal investigations against plaintiff. (Id. at 142:8-145:3; Decl. of Gary Hampton Ex. A ("Hampton Decl.") ¶ 26.) One investigation, which involved the failure to report an in-custody death, found that the allegations against plaintiff were unfounded. (Hampton Decl. ¶ 26.) The other investigation found that the allegations against plaintiff were not sustained. (Id. ¶ 61.) Plaintiff was not disciplined based upon the outcome of either investigation. (Id.)

In March 2011, plaintiff filed a state court action against the City, Churchill, and other City officials alleging that they violated various provisions of the California Public Safety Offices Procedural Bill of Rights Act ("PBRA") by investigating him, keeping his investigations open for more than one year, and subjecting him to adverse employment action. (Ex. 34 ("2011 Compl."); Ex. 35 ("2011 First Am. Compl.").)

From August 15, 2011 through March 31, 2016, Gary Hampton served as the Chief of Police for the City. (Hampton Decl. ¶ 3.) In 2012, Hampton assigned plaintiff, as the senior Captain, to lead the special operations division. (Id. ¶ 29.)

In this role, plaintiff oversaw the professional standards unit, which conducts Internal Affair investigations into complaints against police officers. (Id. ¶ 31.) Additionally, plaintiff served as lead investigator for an investigation of two "rank and file" officers, an officer and a sergeant. (Id. ¶¶ 21, 34, 48; Churchill Decl. ¶ 10a.) As lead investigator, plaintiff had the authority to determine whether an investigative search into a City-issued smart phone was warranted and make a recommendation to Hampton. (Hampton Decl. ¶ 34.) Hampton never received any recommendation from plaintiff regarding either of the two officers that plaintiff investigated. (Id.)

On April 3, 2013, plaintiff filed a Motion to Disqualify Defense Counsel from the ongoing state court litigation and attached to his motion a declaration disclosing the names of two police officers and information about an Internal Affairs investigation into those officers. (Decl. of Arlin Kachalia Ex. D ("Kachalia Decl.") ¶ 11; Ex. 38 ("Decl. of Espinoza in Support of Mot. to Disqualify Defense Counsel").)

On or about April 1 through April 3, 2013, Hampton received information that plaintiff had disclosed to an unauthorized third party confidential personnel information regarding the Internal Affairs investigation into the two police officers. (Hampton Decl. ¶ 36.) In addition, Hampton received information that plaintiff also disclosed emails containing confidential attorney-client communications between the Tracy Policy Department and its outside employment counsel and the City's strategy relating to the two police officers' appeals of their discipline decisions. (Id.)

3

Furthermore, Hampton understood that once the declaration was filed in the state court, it became accessible to the public and a public record. (Id. ¶ 37.) Therefore, Chief Hampton opened an investigation into plaintiff's misconduct as plaintiff had potentially breached his duty to maintain the confidentiality of personnel information, and had violated various sections of the Tracy Police Department Policy Manual. (Id. ¶ 38.) On April 4, 2013 Hampton followed standard practice and placed plaintiff on paid administrative leave pending an investigation into plaintiff's conduct. (Id. ¶ 39-40.) Hampton retained a third-party outside investigator, Oliver Lee Drummond, to investigate plaintiff's disclosure of confidential information. (See id. ¶ 44.)

On April 10, 2013, Hampton received information that plaintiff had asked Tracy Police Detective Edgar Campbell how to remove photographs from his iPhone, and Campbell showed plaintiff how to use the Department's "Cellebrite" forensics equipment for this purpose. (Id. ¶ 49) Plaintiff took the equipment into his office, and returned the equipment to Campbell on the same day. (Id.)

On May 16, 2013, Mr. Drummond sent a letter to Ms. Alison Berry Wilkinson, plaintiff's counsel during the administrative investigation, notifying her that he would be investigating the matter on behalf of the Tracy Police Department. (Id. ¶¶ 52, 53; Ex. 16 ("Drummond Letter").) As part of the investigation, Hampton decided to search the City-issued and owned iPhone and computer that plaintiff had been using to perform his work duties, because he had information that

4

plaintiff used his phone to email confidential information to a third party. (Hampton Decl. ¶ 45.) Thus, Hampton authorized the search to determine the extent of plaintiff's unauthorized disclosure of confidential information. (Id.) The investigation and the search revealed that plaintiff had used his iPhone to send sexually explicit photographic images to employees who worked in separate local police departments, and to share restricted internal Tracy Police Department documents and information with his attorney in the pending state litigation against the City. (Hampton Decl. ¶ 51; Ex. 22 ("Drummond Investigation Report") at 2.)

On June 24, 2013, Hampton sent plaintiff a letter notifying him that the Department had scheduled an investigative interview for July 17, 2018, and informing him of each of the alleged policy violations the Department was investigating. (Hampton Decl. ¶ 54; Ex. 17 ("June 24 Letter").) On July 9, 2013, Hampton issued plaintiff a second letter notifying him that the investigative interview was rescheduled to July 30, 2018. (Hampton Decl. ¶ 54; Ex. 9 ("July 9 Letter")." On July 26, 2013, plaintiff's attorney informed Chief Hampton that plaintiff had submitted his retirement papers, and on July 29, 2013, plaintiff retired. (Hampton Decl. ¶¶ 57, 58; Ex 20 ("July 26 Email").) Although plaintiff had already announced his retirement, Hampton still offered him the opportunity to participate in the pending Internal Affairs investigation. (Hampton Decl. ¶ 59; July 26 Email; Ex. 21 ("July 29 Retirement Letter").)

Plaintiff filed his initial Complaint in the instant action on April 6, 2015, and the court dismissed plaintiff's

5

Complaint without prejudice. (Compl. (Docket No. 1); November 15 Order (Docket No. 32).) Plaintiff filed a First Amended Complaint ("FAC") under 42 U.S.C. § 1983 alleging the City and Churchill violated plaintiff's "First, Fourth, and/or Fourteenth Amendment[]" rights against him," by "discrimin[ing]" against him, "retaliati[ng]" against him, denying him "due process," and denying him "Equal Protection of the law." (FAC ¶¶ 49-50, 56-57 (Docket No. 33).) Plaintiff also added two new claims for conspiring to violate plaintiff's constitutional rights in violation of 42 U.S.C. § 1985, and for infringing upon plaintiff's rights to make and enforce contracts in violation of 42 U.S.C. § 1985. (FAC ¶¶ 60-68.) The Court denied defendant's Motion to Dismiss plaintiff's 42 U.S.C. § 1983 causes of action, but granted defendants' Motion to Dismiss plaintiff's causes of action under § 42 U.S.C. §§ 1981 and 1985. The court now considers defendants' Motion for Summary Judgment on plaintiff's remaining causes of action under 42 U.S.C. § 1983. Plaintiff's counsel asked for an extension to file an opposition, it was granted, but notwithstanding several unanswered email and telephonic inquiries by the clerk to plaintiff's counsel, he filed no opposition or other response to defendants' motion.

II. <u>Legal Standard</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's

favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[W]here the operative facts are substantially undisputed, and the heart of the controversy is the legal effect of such facts, such a dispute effectively becomes a question of law that can, quite properly, be decided on summary judgment." Joyce v. Renaissance Design Inc., Civ. No. 99-07995 LGB (EX), 2000 WL 34335721, at *2 (C.D. Cal. May 3, 2000); see also Braxton-Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir. 1985) ("[W]here the palpable facts are substantially undisputed, [the controverted] issues can become questions of law which may be properly decided by summary judgment.").

"Even when a summary judgment motion is unopposed, a district court must determine whether summary judgment is appropriate--that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." McClintock v. Colosimo, Civ. No. 2:13-264 TLN DB, 2017 WL 1198653, at *1 (E.D. Cal. Mar. 31, 2017) (citations and internal quotations omitted.) "A court 'need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials.'" Leramo v. Premier Anesthesia Med. Grp., Civ. No. 09-2083 LJO JTL, 2011 WL 2680837, at *8 (E.D. Cal. July 8, 2011) (quoting United States v. One Piece of Real Prop., 363 F.3d 1099, 1101 (11th Cir. 2004)).

III. Discussion

Defendants argue that any claims that rely on acts that occurred before April 6, 2013 are time-barred. However, defendants do not clearly summarize or analyze which claims they

believe are time-barred. Because the court concludes that plaintiff is not entitled to recover on the merits of any of his claims, the court does not address the statute of limitations.

   A.   First Amendment Retaliation
       1.   Retaliation for Filing State Action

Plaintiff alleges that defendants violated his First Amendment Rights by denying him a promotion and placing him on administrative leave in retaliation for filing the state action. (FAC ¶¶ 39, 58.) However, plaintiff cannot establish that he engaged in protected speech for the same reasons discussed in the November 11, 2016 Order granting defendants' Motion to Dismiss. To state a First Amendment claim in the public employment context, a public employee must allege that he "spoke on a matter of public concern." Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1068 (9th Cir. 2012). However, the subject matter of plaintiff's state court litigation concerns issues that amount to "individual personnel disputes and grievances," and thus they do not constitute protected speech under the First Amendment. See Desrochers v. City of San Bernardino, 572 F.3d 703, 710 (9th Cir. 2009) ("[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern.").

       2.   Retaliation for Association with David Helm

Plaintiff also alleges that defendants violated his First Amendment Rights by retaliating against him for his association with David Helm. (FAC ¶¶ 39, 58.)

       Prior to working for the Tracy Police Department,

plaintiff worked as a police officer for the City of Hayward with fellow officer David Helm. (Dep. of David Helm Vol. I ("Helm Dep. I") at 21:16-21; Espinoza Dep. I at 214:13-23.). Plaintiff alleges that in 2011, Helm made requests for records under the California Public Records Act and lodged formal and informal complaints about a pattern of retaliation at the Tracy Police Department. (FAC ¶ 38(c).) Plaintiff further alleges that he and Helm were close, and during the state court litigation he was questioned about his relationship with Helm. (Id.)

The constitutionally protected "freedom of association" protects both "expressive association" and "intimate association." See City of Dallas v. Stanglin, 490 U.S. 19, 24-25 (1989). As to expressive association, the First Amendment protects the "right to associate for the purpose of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion." Roberts v. U.S. Jaycees, 468 U.S. 609 (1984). As to "intimate associations, the First Amendment "protects those relationships . . . that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life." Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987).

Here, plaintiff presents no evidence to establish either an intimate or expressive association protected by the First Amendment. The mere fact that both plaintiff and Helm worked together at the Hayward Police Department, without more,

9

does not constitute a protected association under the First Amendment. See Vieira v. Presley, 988 F.2d 850, 852 (8th Cir. 1993) (finding failure to state First Amendment association claim where plaintiff "does not allege any expressive purpose to his associations with friends and acquaintances," and "does not allege a close, intimate relationship," but merely "characterizes [plaintiff's] associates as friends and acquaintances."); Cummings v. DeKalb Cty., 24 F.3d 1349, 1354 (11th Cir. 1994)(granting summary judgment where plaintiffs "neither alleged in their complaint nor presented any evidence to establish the existence at any time of an association between any of the plaintiffs and [their co-worker] which is entitled to special constitutional protection.") Thus, plaintiff cannot establish that the First Amendment protects his right to associate with David Helms.

Accordingly, the court will grant summary judgment on plaintiff's First Amendment retaliation claim.

B. Fourteenth Amendment Due Process

1. Paid Administrative Leave

Plaintiff's due process claim is vague and difficult to decipher; however, plaintiff appears to allege that defendants violated his due process rights by placing him on paid administrative leave. (FAC ¶¶ 3, 21, 30).

The "essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S.

306, 313 (1950)). "[A] public employee with a property interest in his continued employment must be provided with 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 968 (9th Cir. 2011) (quoting Cleveland Bd. Of Educ., 470 U.S. at 546). The hearing for termination of public employment "need not be elaborate." Id. So long as the "individual [has] the opportunity to be heard before he is deprived" of his job, the employer has satisfied the "root" requirement of due process. Id.

Here, defendants concede that plaintiff had a property interest in his job as a police officer. See Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) ("[O]ne's actual job as a tenured civil servant is property.") However, a public employee suspended with pay has not been deprived of a property interest. See Pitts v. Bd. of Educ. of U.S.D. 305, 869 F.2d 555, 556 (10th Cir. 1989) (internal citation omitted) ("While suspension of a public employee without pay may infringe upon a property right, the two-day suspension with pay did not deprive [plaintiff] of any measurable property interest."); Piscottano v. Murphy, 511 F.3d 247, 288 (2d Cir. 2007) (holding that being placed on paid administrative leave pending Loudermill hearing did not implicate property interest); Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 495 (5th Cir. 2011) ("Placement on paid administrative leave does not constitute deprivation of a property interest.")

Moreover, plaintiff presents no evidence that the

11

deprivation occurred without due process. To the contrary, Chief Hampton notified plaintiff in writing that he was being placed on paid administrative leave pending the investigation, and plaintiff was given the opportunity to participate in an investigative interview. (Hampton Decl. ¶¶ 41, 54; Ex. 13 ("Letter from Hampton to Plaintiff.")). Furthermore, that the City placed plaintiff on leave before providing him a hearing is not itself a violation of due process. See Abel v. City of Algona, 348 F. App'x 313, 315 (9th Cir. 2009) (declining to find "due process right to a hearing before [police officers] are put on leave"); Dias v. Elique, 436 F.3d 1125, 1132 (9th Cir. 2006) (same).

### 2. Promotion

Plaintiff also alleges that defendants violated his due process rights by denying him the right to a promotion to work as interim or acting Chief. (FAC ¶¶ 3, 21, 30). However, the Ninth Circuit has held that "expectancy in a promotion [is not] a property interest" unless it is guaranteed "from an independent source such as state law." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). As previously discussed in the court's November 15, 2016 Order dismissing plaintiff's initial Complaint, the failure to promote plaintiff even though he was the most senior of command officers in violation of "past practice" insufficient to establish a property interest under Ninth Circuit precedent. See Nunez, 147 F.3d at 873. Plaintiff cites no statute, regulation, or contractual term entitling him to a promotion once he became the most senior officer.

Accordingly, the court will grant summary judgment on

12

plaintiff's Fourteenth Amendment claim.

    C.    <u>Fourth Amendment Search and Seizure</u>

Plaintiff claims defendants violated the Fourth Amendment by searching and seizing his work iPhone and searching his desk and "other private areas" at the Tracy Police Department (FAC ¶ 46.)

The Fourth Amendment protects against unreasonable searches and seizures. <u>See</u> U.S. Const. amend. IV. A four-justice plurality in <u>O'Connor</u> concluded that the proper analytical framework for Fourth Amendment claims against government employers has two steps. <u>City of Ontario v. Quon</u>, 560 U.S. 746, 747 (2010) (citing <u>O'Connor v. Ortega</u>, 480 U.S. 709 (1987)). "First, because 'some [government] offices may be so open . . . that no expectation of privacy is reasonable,' a court must consider '[t]he operational realities of the workplace' to determine if an employee's constitutional rights are implicated." <u>Quon</u>, 560 U.S. at 747. "[E]mployer policies concerning communications . . . shape the reasonable expectations of their employees, especially to the extent that such policies are clearly communicated. <u>Id.</u> at 760. "The question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." <u>Id.</u> at 756-57.

"Second, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation 'for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances.'" <u>Id.</u> To be reasonable in scope, the search must be "reasonably

13

related to the objectives of the search and not excessively intrusive in light of ... the nature of the [misconduct]." O'Connor, 480 U.S. at 726 (quoting New Jersey v. T.L.O., 469 U.S. 325, 342 (1985)).

### 1. Defendant Churchill

As an initial matter, plaintiff presents no evidence that Churchill requested, directed, or authorized the search of plaintiff's city-issued iPhone or any work areas, including plaintiff's assigned desk. Moreover, any decision regarding searching plaintiff's iPhone and work areas was made by Chief Hampton. (See Hampton Decl. ¶¶ 45-46.) "Liability under § 1983 must be based on the personal involvement of the defendant." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). Because Churchill was not involved in the alleged violation of plaintiff's Fourth Amendment rights, defendant Churchill is entitled to summary judgment on plaintiff's Fourth Amendment claim.

### 2. Desk

Plaintiff alleges that defendants unlawfully searched his desk. Here, Chief Hampton had two Tracy Police Department staff members locate any pending or active files on plaintiff's desk so that those files could be re-assigned and completed in a timely fashion. (Hampton Decl. ¶ 70.) The Tracy Police Department policy states that desks "may be administratively searched by a supervisor . . . for non-investigative purposes," like "obtaining a needed report." (Ex. 2 ("Tracy Police Department Policy Manual") at 2-38.) Thus, this policy demonstrates that, under the circumstances, plaintiff did not

have a reasonable expectation of privacy in his desk. See <u>Muick v. Glenayre Elecs.</u>, 280 F.3d 741, 743 (7th Cir. 2002) (stating that where [defendant] had announced that it could inspect the laptops that it furnished for the use of its employees, [] this destroyed any reasonable expectation of privacy that [plaintiff] might have had."). Moreover, plaintiff does not contend that the desk is private; rather, he recognized that the desk belonged to the City. (Espinoza Dep. I at 157:2-13.)

Even if defendant had a reasonable expectation of privacy in the items located in or on his desk, defendants present evidence that any search that allegedly occurred was reasonable and limited in scope. For instance, defendants state that there was no search inside plaintiff's desk, and any personal items on the desk were placed in a box and put in the closet in plaintiff's office. (Hampton Decl. ¶ 70; Espinoza Dep. at 156:7-17). Thus, defendants demonstrate that even assuming there was a search of plaintiff's desk, "the search was justified at its inception because there were 'reasonable grounds for suspecting that the search [was] necessary for a noninvestigatory work-related purpose.'" See <u>Quon</u>, 560 U.S. 746. For the foregoing reasons, there was no unreasonable search of plaintiff's desk.

### 3. Phone

Plaintiff alleges that defendants illegally seized and searched his iPhone. (FAC ¶ 38.) Here, the city presents evidence, unrebutted by plaintiff, that plaintiff had no reasonable expectation of privacy in the phone. The phone was the property of the City, even though plaintiff paid a small sum

each pay period to be able to use the phone for limited personal purposes. (Ex. 43 ("Suppl. Responses to Requests for Admissions Number 4"); Espinoza Dep. I at 147:2-10; Hampton Decl. ¶¶ 41, 45, 47.) Most importantly, the Tracy Police Department policies notified employees that they had no expectation of privacy when using phones provided by the department. (Hampton Decl. ¶¶ 34, 41, 45, 47); Tracy Police Department Policy Manual at 2-25-2-29.) Thus, there is no genuine issue of material fact as to whether plaintiff had a reasonable expectation of privacy in his cell phone.

Even if plaintiff had a reasonable expectation of privacy, defendants' search of plaintiff's city-issued phone was reasonable as a matter of law. Here, plaintiff was being investigated for the unauthorized disclosure of confidential peace officer information, a violation of Tracy Police Department policy, and defendants suspected that plaintiff used his cell phone to send confidential work files to an unauthorized third party. Thus, the search was related to the purpose of the investigation, was not excessive in scope, and was reasonable. See Quon, 560 U.S. at 765-66, (holding that government employer did not violate the Fourth Amendment when it reviewed the law enforcement officer's text messages sent on a government-issued pager, where the search was motivated by legitimate work-related purpose.) Moreover, "that the search did reveal intimate details of [plaintiff's] life does not make it unreasonable, for under the circumstances a reasonable employer would not expect that such a review would intrude on such matters." Id. at 763.

For the foregoing reasons, there is no triable issue of

material fact and the court will grant summary judgment to defendants on the Fourth Amendment claim.

   D.   Fourteenth Amendment Equal Protection

Plaintiff claims that defendants discriminated against him based on his race and ethnic origin, "Latin and Mexican," because Caucasian officers under the administrative discipline process at the Tracy Police Department were not subjected to the same searches and seizures to which plaintiff was subjected. (FAC ¶ 40.)

To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class, and that plaintiff was treated differently from persons similarly situated. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), Lam v. City & County of San Francisco, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), aff'd, 565 F. App'x 641 (9th Cir. 2014). A plaintiff may make such a showing by proving: (1) the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification." Lam, 868 F. Supp. 2d at 951 (citations omitted).

Here, plaintiff presents no evidence that he was similarly situated to the other Tracy Police Department officers, other than to allege in conclusory terms in the FAC that the

17

Caucasian officers were also subject to the administrative discipline process.  Additionally, there is no evidence in the record of intentional discrimination on the basis of race.  For instance, plaintiff presents no evidence of racial animus, no evidence of what is typical for internal affairs investigations, and no evidence of a pattern of disparate treatment motivated by racial animus.  See Jimmie's Limousine Serv., Inc. v. City of Oakland, Civ. No. 04-3321 WHA, 2005 WL 2000947, at *5 (N.D. Cal. Aug. 18, 2005), aff'd, 252 F. App'x 847 (9th Cir. 2007). Moreover, plaintiff did not file an opposition, and the court notes "it is not the Court's responsibility to cobble together plaintiff's case without assistance from counsel."  See id. (citing Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001)) (granting defendants' summary judgment on plaintiff's equal protection claim where plaintiff lacks evidence to demonstrate intentional discrimination).

Furthermore, defendants present evidence to establish that plaintiff and the other officers who were allegedly treated differently were not similarly situated.  For instance, plaintiff was a Police Captain, part of the command staff, and thus he was held to a higher standard as compared to the other rank and file officers--one a sergeant and the other a police officer. (Hampton Decl. ¶¶ 21, 34, 48; Churchill Decl. ¶ 10(a).) Moreover, plaintiff was the only command staff member being investigated for breach of confidentiality.  (Hampton Decl. ¶ 48.)  As to the officer whose phone was seized but not searched, that officer was not accused of misconduct involving the use of his phone, and nonetheless, it was plaintiff, not defendants, who

18

was responsible for recommending whether that officer's phone should be searched. (Id. ¶ 34; Espinoza Dep. I 157:19-158:3-11.) Thus, plaintiff was not similarly situated to the other officer's subject to Internal Affairs investigations.

Accordingly, the court will grant defendant's Motion for Summary Judgment on plaintiff's Equal Protection claim.

IT IS THEREFORE ORDERED that defendants' Motion for Summary Judgment (Docket No. 67) be, and the same hereby is, GRANTED.

The Clerk of Court is instructed to enter judgment in favor of defendants and against plaintiff.

Dated: May 21, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE